FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDOLPH S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of the Social Security Administration, <br><br> Defendant. | NO: 1:19-CV-03196-FVS <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 19. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Karl E. Osterhout, appearing *pro hoc vice*. Defendant is represented by Special Assistant United States Attorney Sarah Moum. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 17, is denied and Defendant's Motion, ECF No. 19, is granted.

///

///

ORDER ~ 1

**JURISDICTION**

Plaintiff Randolph S.[1] filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 3, 2016, Tr. 50-51, alleging disability since May 15, 2015, Tr. 164, 166, due to rheumatoid arthritis and a right knee impairment, Tr. 201. Benefits were denied initially, Tr. 90-93, and upon reconsideration, Tr. 98-110. A hearing before Administrative Law Judge Vadim Mozyrsky ("ALJ") was conducted on June 22, 2018. Tr. 31-49. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ also took the testimony of vocational expert Thomas Polsin. *Id*. The ALJ denied benefits on August 23, 2018. Tr. 15-23. The Appeals Council denied Plaintiff's request for review on June 27, 2019. Tr. 1-5. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3). ECF No. 1.

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 58 years old at the alleged onset date. Tr. 164. He completed

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

1   one year of college in 2005.  Tr. 202, 310.  Plaintiff's work history includes the job

2   of logger, which he also identifies as a loader operator and timber faller.  Tr. 202,

3   255.  At application, he stated that he stopped working on November 1, 2012,

4   because he "was having problems with the employer and just quit."  Tr. 201.

5                                    **STANDARD OF REVIEW**

6          A district court's review of a final decision of the Commissioner of Social

7   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8   limited; the Commissioner's decision will be disturbed "only if it is not supported

9   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation.  *Id*.

17         In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner.  If the evidence in the record "is

19  susceptible to more than one rational interpretation, [the court] must uphold the

20  ALJ's findings if they are supported by inferences reasonably drawn from the

21  record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

1   court "may not reverse an ALJ's decision on account of an error that is harmless."

2   *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate

3   nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

4   party appealing the ALJ's decision generally bears the burden of establishing that

5   it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

6                   **FIVE-STEP EVALUATION PROCESS**

7       A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act. First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

13   impairment must be "of such severity that he is not only unable to do his previous

14   work[,] but cannot, considering his age, education, and work experience, engage in

15   any other kind of substantial gainful work which exists in the national economy."

16   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

17       The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria. See 20 C.F.R. §§

19   404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

20   considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

21   416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

ORDER ~ 4

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and

mental work activities on a sustained basis despite his or her limitations, 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of

the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since May 15, 2015, the alleged onset date.  Tr. 17.  At step two,

the ALJ found that Plaintiff has the following severe impairments: degenerative

joint disease of the right knee and rheumatoid arthritis.  Tr. 17.  At step three, the

ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

18.  The ALJ then found that Plaintiff has the RFC to perform light work as

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he has the following

limitations:

> [H]e could lift and carry 20 pounds occasionally and 10 pounds
> frequently; he could push and pull as much as lift and carry; he could
> sit for up to 6 hours in an 8-hour workday; he could stand and walk for
> 2 hours total in an 8-hour workday; he was limited to frequently
> climbing ramps and stairs and occasionally climbing ladders and
> scaffolds; he was limited to frequently kneeling and crouching; he
> could occasionally crawl.

Tr. 18.  At step four, the ALJ identified Plaintiff's past relevant work as a log

loader and found that he is able to perform this past relevant work as actually

ORDER ~ 7

performed and as generally performed.  Tr. 23.  On that basis, the ALJ concluded

that Plaintiff has not been under a disability, as defined in the Social Security Act,

from May 15, 2015, through the date of his decision.  Tr. 23.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him DIB under Title II of the Social Security Act and SSI benefits under Title XVI

of the Social Security Act.  ECF No. 17.  Plaintiff raises the following issues for

this Court's review:

1.    Whether the ALJ erred by denying the claim at step four; and

2.    Whether the ALJ properly evaluated Plaintiff's symptom statements.

## DISCUSSION

**1.    Step Four**

Plaintiff argues that the ALJ erred at step four.  ECF No. 17 at 4-20.  This

argument is premised on the ALJ failing to accurately weigh the medical opinions

in the record, which resulted in an alleged incomplete RFC and an alleged

inaccurate step four determination.  *Id*.  Specifically, Plaintiff challenges the ALJ's

treatment of the opinions of Daniel Sager, M.D., W. Daniel Davenport, M.D., and

Guillermo Rubio, M.D.  *Id*.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Here, the functional opinions of Dr. Sager and Dr. Davenport contradict each other. *See infra.* Therefore, the ALJ is only required to provide specific and legitimate reasons for rejecting their opinions.

### a.     Daniel Sager, M.D.

On July 12, 2016, Dr. Sager and Plaintiff completed a questionnaire together. Tr. 308 ("I asked Mr. Sprinkle to complete this form (blue ink) and I completed the rest (black ink)"). According to this form, Plaintiff was capable of sitting six or more hours a day and standing/walking two hours a day. Tr. 307. Plaintiff was required to alternate between sitting and standing every sixty minutes. *Id*. Plaintiff could occasionally lift/carry twenty pounds, and rarely lift/carry

ORDER ~ 9

1   twenty-five pounds.  *Id*.  Plaintiff's manipulative limitations including reaching in

2   all directions, handling, fingering, and feeling were limited to occasional.  *Id*.

3   Plaintiff's pain or other symptoms were severe enough to occasionally interfere

4   with his attention and concentration.  Tr. 308.  Plaintiff should avoid humid/wet

5   environmental conditions.  *Id*.  Additionally, Plaintiff would require the

6   accommodations of unscheduled breaks and walking breaks.  *Id*.

7       The ALJ gave weight to Dr. Sager's sitting, standing/walking, and lifting

8   limits, but the remaining limitations were given little weight for two reasons: (1)

9   the degree of functional limitations he described was inconsistent with his own

10   treatment notes from July 12, 2016; and (2) the opinion was contracted by his July

11   2017 opinion.

12       The ALJ's first reason for rejecting the majority of Dr. Sager's opinion, that

13   some limitations were inconsistent with his treatment notes from July 12, 2016, is

14   specific and legitimate.  The Ninth Circuit has found that inconsistencies between

15   the opinion and the treatment notes from the same day of the opinion meets the

16   heightened standard of clear and convincing.  *Bayliss*, 427 F.3d at 1216.  Here, Dr.

17   Sager's treatment note from July 12, 2016 states that Plaintiff was doing well on

18   his three-drug rheumatoid arthritis regimen and presented with rheumatoid

19   nodules.  Tr. 596.  The objective observations include nodules present on the

20   elbows, subtle swelling in the peripheral joints which were nontender, full range of

21   motion in all joints, normal muscle mass, and normal gait.  Tr. 597.  Therefore, the

ORDER ~ 10

ALJ's conclusion that "the degree of functional limitation he described is inconsistent with his own contemporaneous treatment notes," Tr. 22, is "supported by substantial evidence and was based on a permissible determination within the ALJ's province," *Bayliss*, 427 F.3d at 1216.

The ALJ's second reason for rejecting the majority of Dr. Sager's opinion, that some limitations were contradicted by the July 2017 opinion, is specific and legitimate. On July 7, 2017, Dr. Sager completed an Arthritis Residual Functional Capacity Questionnaire. Tr. 315-20. Dr. Sager listed Plaintiff's diagnosis as "Rheumatoid arthritis (RA) in remission but requiring rx ongoing to maintain this." Tr. 315. He further stated that Plaintiff's symptoms were "prior to rx of RA." *Id*. He further stated that Plaintiff's pain would never interfere with his attention and concentration. *Id*. He stated that he did not know how Plaintiff could tolerate work stress and that there were no current side effects of any medication. Tr. 316. He did not address any of the physical limitations on the form, stating they were not tested. Tr. 316-19. This opinion is in drastic contrast to the opinion only a year earlier, and supports the ALJ's rejection that the July 2016 opinion.

Plaintiff also argues that the ALJ erred by failing to address the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). ECF No. 17 at 11-12. These factors include the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the ALJ addressed such factors. He stated that Plaintiff and Dr. Sager had a

treating relationship, he found that the opinion was not supported by the

contemporaneous treatment notes, and he found the opinion not consistent with Dr.

Sager's later opinion.  Therefore, the ALJ did not err in his treatment of the July

2016 opinion.

### b.    W. Daniel Davenport, M.D.

On July 27, 2016, Dr. Davenport completed a consultative examination of

Plaintiff.  Tr. 309-13.  He reviewed Dr. Sager's treatment notes from January 21,

2016 and March 1, 2016.  Tr. 309.  He completed a physical examination, with the

only abnormality being on the seated straight leg raise testing listed as 75/90

bilaterally.  Tr. 311-12.  He opined that Plaintiff's maximum standing and walking

capacity was at least six hours and his maximum sitting capacity was at least six

hours.  Tr. 312.  He stated that Plaintiff could be expected to lift fifty pounds

occasionally and twenty-five pounds frequently.  Tr. 313.  He stated that Plaintiff

"could be expected to do climbing, balancing, stooping, kneeling, crouching, and

crawling three to four hours daily" and Plaintiff was "able to do reaching, handing,

fingering, and feeling frequently."  *Id*.  He limited Plaintiff to occasional exposure

to heights, heavy machinery, and extreme temperatures.  *Id*.  The ALJ gave the

opinion little weight for five reasons:  (1) it was based on a one-time exam without

the opportunity to review more recent medical records; (2) the non-exertional

restrictions were contradicted by Dr. Davenport's own normal examination

findings; (3) the opinion appeared to be based heavily on Plaintiff's self-reports;

1    (4) the non-exertional limitations were inconsistent with Dr. Sager's treatment

2    notes; and (5) the non-exertional limitations were inconsistent with Plaintiff's

3    reported level of activity.  Tr. 22.

4         The ALJ's first reason for rejecting Dr. Davenport's opined limitations, that

5    they were based on a one-time exam, is not specific and legitimate.  The status of

6    an examining or treating provider is a factor that an ALJ is to consider when

7    weighing an opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c), and it dictates the

8    weight assigned to the opinion, *Holohan,* 246 F.3d at 1201-02, but it does not rise

9    to the level of a specific and legitimate reason for rejecting an opinion.  However,

10   the ALJ provided multiple other reasons for rejecting Dr. Davenport's limitations.

11   *See infra*.  Therefore, any error from this reason is harmless.  *See Tommasetti v.*

12   *Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear

13   from the record that the . . . error was inconsequential to the ultimate nondisability

14   determination.").

15        The ALJ's second reason for rejecting Dr. Davenport's opined limitations,

16   that the non-exertional limitations were inconsistent with his observations, is

17   specific and legitimate.  As addressed above, inconsistencies between the opinion

18   and the treatment notes from the same day of the opinion meets the heightened

19   standard of clear and convincing.  *Bayliss*, 427 F.3d at 1216.  Here, Dr.

20   Davenport's examination was essentially normal.  Tr. 311-12.  Additionally, he

21   stated that Plaintiff's rheumatoid arthritis was "well-controlled with medications."

Tr. 312. Therefore, the ALJ's conclusion that the examination report did not support the opined non-exertional limits is supported by substantial evidence.

The ALJ's third reason for rejecting Dr. Davenport's opined limitations, that that he relied heavily on Plaintiff's self-reports, is specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ specifically found that the opined non-exertional limits were inconsistent with Dr. Davenport's own observations. Tr. 22. He then went on to conclude that "[a]s such, it appears that Dr. Davenport's opinion relied heavily on the claimant's subjective complaints." *Id*. Therefore, the ALJ provided a sufficient basis to support his conclusion that the opinion was heavily based on Plaintiff's self-reports. The ALJ found Plaintiff's symptom statements to be unsupported in the record, Tr. 19, and Plaintiff failed to properly challenge the ALJ's finding in his briefing, *see infra*. Therefore, the ALJ's determination that Dr. Davenport's opinion relied heavily on Plaintiff's self-reports meets the specific and legitimate standard.

The ALJ's fourth reason for rejecting Dr. Davenport's limitations, that the non-exertional limitations were inconsistent with Dr. Sager's treatment notes, is specific and legitimate. In April of 2016, Plaintiff had a nodule on his left arm,

mild swelling in his wrists and fingers, he had some pain with range of motion, and

tender wrists.  Tr. 545.  Dr. Sager started Plaintiff on Methotrexate.  Tr. 546.  By

July of 2016, Plaintiff's rheumatoid arthritis is described as "stable on 3 drug

regimen."  Tr. 594.   He had some nodules on his elbow and subtle swelling in his

peripheral joints, which were nontender.  Tr. 597.  In November of 2016,

Plaintiff's rheumatoid arthritis was stable, Tr. 670, and he had a tiny nodule on his

left forearm, but otherwise no swelling, effusion, restricted joint range of motion,

or tenderness, Tr. 673.  In March of 2017, his rheumatoid arthritis was still

considered stable, Tr. 712, and he had no nodules, tenderness, swelling, or

deformity of his joints.  Tr. 713-14.  In April of 2018, Plaintiff reported he had

been incarcerated and off methotrexate for several months.  Tr. 743.  He had

tenderness and swelling in his wrists, fingers, elbows, and ankles.  Tr. 744.  He had

a painful range of motion in hands, the left ankle, and shoulders.  *Id*.  At the

hearing, Plaintiff testified that he was back on Methotrexate and that his doctor

told him to get back to where he was would take at least 27 weeks.  Tr. 35.  Based

on Dr. Sager's records, the ALJ concluded that Plaintiff's rheumatoid arthritis was

in remission with medication.  Tr. 22.  The Ninth Circuit has held that impairments

controlled by medication are not disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006).  Additionally, the finding that Plaintiff's

impairment is controlled with medication does not support the  non-exertional

functional limitations opined by Dr. Davenport.

The ALJ's fifth reason for rejecting Dr. Davenport's opined limitations, that the non-exertional limitations were inconsistent with Plaintiff's reported activities, is specific and legitimate.  A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition.  *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).  Here, Plaintiff reported to Dr. Davenport that he was the care provider for his father.  Tr. 310.  This is repeated throughout the record.  Tr. 208 (Plaintiff's father reports that he does household chores and cares for him); Tr. 216 (Plaintiff reports caring for his ninety-nine year old father).  Specifically, Plaintiff reported that his father suffered from broken hips and required around the clock care.  Tr. 310.  The ALJ's conclusion that such a demanding task was inconsistent with Dr. Davenport's opined non-exertional limitations is supported by substantial evidence and meets the specific and legitimate standard.

### c.    Guillermo Rubio, M.D.

At the initial application, Dr. Rubio reviewed the evidence available in the record at that time, Tr. 53-54, and opined that Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty-five pounds, stand/walk for six out of eight hours, and sit about six out of eight hours.  Tr. 56.  He limited Plaintiff to frequently climbing ramps/stairs, kneeling, and crouching and occasionally climbing ladders, ropes, and scaffolds and crawling.  *Id*.  He limited Plaintiff to frequent handling and fingering.  Tr. 56-57.  The ALJ gave little weight to the

manipulative limitations "because more recent evidence shows that the claimant's rheumatoid arthritis was in remission."  Tr. 21.  The opinion of a non-examining physician can be rejected by reference to specific evidence in the medical record.  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  Here, the ALJ's reliance on Dr. Sager's finding that Plaintiff's arthritis was in remission is sufficient to meet this standard.  Therefore, the ALJ's rejection of Dr. Rubio's manipulative limitations is without error.

In conclusion, the ALJ did not err in his treatment of the medical opinions in the record.  Therefore, the ALJ's RFC determination properly addressed his limitations, and the Court will not disturb his step four determination.

**2.    Plaintiff's Symptom Claims**

Plaintiff challenges the ALJ's rejection of his symptom statements by arguing that he should have addressed Plaintiff's strong work history as evidence of his credibility.  ECF No. 17 at 22.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably

1  have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591

2  (9th Cir. 2009) (internal quotation marks omitted).

3      Second, "[i]f the claimant meets the first test and there is no evidence of

4  malingering, the ALJ can only reject the claimant's testimony about the severity of

5  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

6  rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).

7  "General findings are insufficient; rather, the ALJ must identify what testimony is

8  not credible and what evidence undermines the claimant's complaints." *Id*.

9  (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

10  2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

11  specific to permit the court to conclude that the ALJ did not arbitrarily discredit

12  claimant's testimony."). "The clear and convincing standard is the most

13  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

14  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

15  924 (9th Cir. 2002)).

16      Here, the ALJ found Plaintiff's medically determinable impairments could

17  reasonably be expected to cause some of the alleged symptoms; however,

18  Plaintiff's "statements concerning the intensity, persistence and limiting effects of

19  these symptoms are not entirely consistent with the medical evidence and other

20  evidence in the record for the reasons explained in this decision." Tr. 19.

21      The ALJ provide three reasons to support his determination: (1) his

statements are inconsistent with his daily activities; (2) the objective evidence in

the file does not corroborate Plaintiff's allegations; and (3) the evidence suggests

that Plaintiff's inability to work was due to factors other than medical impairments.

Tr. 19-20.

Plaintiff advocates that the ALJ should have considered his positive work

history as evidence of credibility, but he failed to challenge the reasons the ALJ did

provide for rejecting his symptom statements.  ECF No. 17 at 21-23.  By failing to

argue that the ALJ did not meet the specific, clear and convincing standard,

Plaintiff has essentially waived any such argument.  *See Carmickle v. Comm'r.,*

*Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  The Ninth Circuit explained

the necessity for providing specific arguments:

> The art of advocacy is not one of mystery.  Our adversarial system relies
> on the advocates to inform the discussion and raise the issues to the
> court.  Particularly on appeal, we have held firm against considering
> arguments that are not briefed.  But the term "brief" in the appellate
> context does not mean opaque nor is it an exercise in issue spotting.
> However much we may importune lawyers to be brief and to get to the
> point, we have never suggested that they skip the substance of their
> argument in order to do so.  It is no accident that the Federal Rules of
> Appellate Procedure require the opening brief to contain the
> "appellant's contentions and the reasons for them, with citations to the
> authorities and parts of the record on which the appellant relies." Fed.
> R. App. P. 28(a)(9)(A).  We require contentions to be accompanied by
> reasons.

ORDER ~ 19

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2]

Moreover, the Ninth Circuit has repeatedly admonished that the court will not

"manufacture arguments for an appellant" and therefore will not consider claims

that were not actually argued in appellant's opening brief. *Greenwood v. Fed.*

*Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to

challenge the issue in his brief, the Court declines to consider the issue of

Plaintiff's symptom statements any further.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for

the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must

defer to an ALJ's assessment so long as it is supported by substantial evidence. 42

U.S.C. § 405(g). As discussed in detail above, the ALJ did not err in his treatment

of the medical opinions. Therefore, he did not err in forming his residual

functional capacity or in denying the claim at step four. Plaintiff has failed to

properly challenge the ALJ's treatment of his symptom statements. After review,

the Court finds the ALJ's decision is supported by substantial evidence and free of

harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

---

[2]Under the current version of the Federal Rules of Appellate Procedure, the

appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

1    1.    Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2    2.    Defendant's Motion for Summary Judgment, ECF No. 19, is

3    **GRANTED**.

4    The District Court Executive is hereby directed to enter this Order and

5    provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

6    the file.

7    **DATED** August 7, 2020.

8

9    _____*s/Fred Van Sickle*_____
     Fred Van Sickle
     Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 21